IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 20, 2017

## STATE OF TENNESSEE v. BARRY WAYNE GOSSAGE

**Appeal from the Circuit Court for Hickman County**
**No. 2010-CR-5130    Michael W. Binkley, Judge**

_____

### No. M2016-02264-CCA-R3-CD

_____

The Defendant, Barry Wayne Gossage, appeals the trial court's revocation of his probation and reinstatement of his original sentence in confinement. On appeal, he argues that he should have been sentenced to a new term of community corrections or probation. Following our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which ROBERT H. MONTGOMERY, JR., and TIMOTHY L. EASTER, JJ., joined.

Richard Boehms, Hohenwald, Tennessee, for the appellant, Barry Wayne Gossage.

Herbert H. Slatery III, Attorney General and Reporter; Brent C. Cherry, Senior Counsel; Kim R. Helper, District Attorney General; and Kate Yeager Delk, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### FACTS

On December 21, 2010, the Defendant pled nolo contendere to aggravated robbery and theft of property under $1000. Pursuant to the plea agreement, the Defendant was sentenced to concurrent terms of ten years for the aggravated robbery conviction and one year for the theft conviction, with one year to be served in confinement and the remainder on community corrections.

A community corrections violation warrant was issued on December 10, 2015, alleging that the Defendant had been untruthful about his court date in a Williamson

County case, had not reported for a drug screen, and had violated his house arrest. The Defendant admitted the violations, and the trial court entered an order on March 9, 2016, revoking the community corrections sentence and transferring the Defendant to probation for the remainder of his sentence, with the conditions that he successfully complete the rehabilitation program at Hope Center Ministries and plead guilty in the Williamson County case.

On June 14, 2016, a probation violation warrant was issued, alleging that the Defendant had been discharged from the Hope Center for noncompliance. At the probation violation hearing, Roy Stinson testified that he had been employed with community corrections since February 2013 and that the Defendant already had two violations in the system when Mr. Stinson took over his supervision from another case worker. Mr. Stinson testified regarding the Defendant's conduct while on community corrections:

> [The Defendant] . . . would fail numerous drug test[s]. In addition to failing a drug test, he would be seen out without having permission to be out. . . . As I recall, I tried several things with [the Defendant] as far as moving him back to level one, having him come see me more often. That just didn't seem to work. And in the very end right before I did the violations, there [were] . . . additional charges that he had received in – out of Williamson County, I think it was.

Mr. Stinson said that the Defendant was dishonest about his Williamson County case. The Defendant's community corrections sentence was revoked in March 2016, and he was allowed to enter the Hope Center program although Mr. Stinson was not in favor of that decision.

Steven Paul with Hope Center Ministries testified that the Defendant entered the eight-month rehabilitation program on March 11, 2016. The Defendant agreed to all of the program's rules and regulations and signed the policy and procedures form, which was admitted as an exhibit. Additionally, the rules were stressed to all of the residents each week during community meetings. The Defendant never indicated that he did not understand the rules.

Mr. Paul said that about one month after the Defendant entered the program, the Defendant filled a prescription and distributed the medication to other residents. Despite this infraction, Mr. Paul allowed the Defendant to restart the program on April 22, 2016. However, the Defendant received numerous warnings and "write-up, after write-up, after write-up" for smoking violations, falling asleep during Bible study, and failing to

complete his chores and "book work." The Defendant was subsequently terminated from the program on June 10, 2016.

On cross-examination, Mr. Paul described one occasion where the Defendant had an entire weekend to complete his book work but played Monopoly instead. Because the Defendant reported that he had a bad back, he was placed on kitchen duty or other light work. Mr. Paul did not discuss any mental issues with the Defendant but said that the Defendant "had to go to some type of doctor." He denied that the Defendant's age was a factor in his termination from the program.

The Defendant testified that he was discharged from the Hope Center because of his disability, explaining that his spine was broken in four places as a result of his falling from a twenty-foot ladder in 2006. He could not perform heavy lifting or manual labor and informed the staff at the Center of his disability prior to entering the program. He suffered a ruptured brain aneurysm in 2010 and underwent four surgeries, which affected his memory and caused reading and comprehension problems. Additionally, the Defendant had been diagnosed with bipolar disorder and was taking medications for that condition. He explained that, during a manic episode, he stayed up for two or three days without sleeping and then, when the episode ended, had trouble staying awake. The Defendant said that his chores at the Center included cooking, mowing the yard, and cleaning the church. The Defendant said that he injured his back while shoveling mulch at the church and that he was taken to a doctor. He was prescribed an anti-inflammatory medication, which was approved by the Center. The Defendant claimed that, on the day of his termination from the program, he was told the program was designed for younger people.

On cross-examination, the Defendant acknowledged that he attended two programs in 1995 and 1997 for cocaine addiction and that he started using opiates in 2006 when he injured his back. He admitted that he occasionally smoked marijuana and that he had a pending charge for drug paraphernalia in Williamson County. He said that charge was the result of his picking up a spoon in the parking lot of the pain clinic where he received treatment because he was afraid a child would pick it up. Regarding his conduct at Hope Center, the Defendant admitted that he received warnings "[a] few times" before receiving write-ups. He denied distributing his medication to other residents, claiming that one of the residents saw the medication in his locker and took some of it.

Nicole Norman, the Defendant's current probation officer, testified that she emailed Rick Owens at the Hope Center on April 13, 2016, inquiring about the Defendant's progress. Mr. Owens responded that the Defendant was struggling with compliance with the Center's policies and that the staff believed the Defendant was

"trying to sabotage his rehabilitation."  Mr. Owens said that the Defendant was given chores based on his weight limits due to his back injury.  The emails exchanged between Ms. Norman and Mr. Owens were admitted as exhibits to the hearing.

At the conclusion of the hearing, the trial court revoked the Defendant's probation and ordered him to serve his original sentence in confinement.

## ANALYSIS

The Defendant argues that the trial court erred in revoking his probation and should have sentenced him to "a new term of [c]ommunity [c]orrections or probation to include successful completion of another rehabilitation program."[1]

A trial court is granted broad authority to revoke a suspended sentence and to reinstate the original sentence if it finds by the preponderance of the evidence that the defendant has violated the terms of his or her probation and suspension of sentence. Tenn. Code Ann. §§ 40-35-310, -311 (2014).  The revocation of probation lies within the sound discretion of the trial court.  State v. Harkins, 811 S.W.2d 79, 82 (Tenn. 1991); State v. Stubblefield, 953 S.W.2d 223, 226 (Tenn. Crim. App. 1997); State v. Mitchell, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991).  To show an abuse of discretion in a probation revocation case, "a defendant must demonstrate 'that the record contains no substantial evidence to support the conclusion of the trial judge that a violation of the conditions of probation has occurred.'"  State v. Wall, 909 S.W.2d 8, 10 (Tenn. Crim. App. 1994) (quoting State v. Delp, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980)).

At the conclusion of the probation violation hearing, the trial court stated it "doubt[ed]" the Defendant's testimony, explaining, "[T]he thing that really ruined it for me, was this testimony about the spoon in the parking lot.  And I was trying my best to think, . . . let's just look at the good side of this and think whether or not that really makes any good sense.  And to me frankly, it does not."  In revoking the Defendant's probation, the trial court determined:

> [N]umerous opportunities have been provided to [the Defendant] to try to turn his life around.  Each and every time, he has had difficulty following the rules.  He has had difficulty doing what he is required to do to

---

[1] It does not appear from the record that any of those involved in this matter realized that, since the Defendant pled guilty to aggravated robbery, he was not eligible for either probation or community corrections.  See Tenn. Code Ann. § 40-35-303(a); State v. Denver L. Brown, III, No. E2007-02786-CCA-R3-CD, 2008 WL 4724685, at *1 (Tenn. Crim. App. Oct. 27, 2008).  For the purpose of this appeal, that oversight is not of consequence because we conclude that the trial court did not err in ordering the Defendant to serve his ten-year sentence in confinement.

at least show some direction in trying to rehabilitate himself and to get himself off of the drugs to follow the rules and do really . . . simple things that need to be done to stay in a program.

. . . .

I think, based upon the testimony of all of the witnesses[,] the abundant proof of violations that have occurred in the past, the numerous opportunities that [the Defendant] has had for rehabilitation, that he has simply failed to take advantage of those opportunities. And it's no one's fault but his own. As much as I regret this, the facts speak for themselves. And based on all of the testimony, the standard of proof involved, his probation will be revoked and the sentence will be imposed.

Upon a finding that a violation has occurred, the trial court may, in its discretion, either: (1) order incarceration; (2) cause execution of the judgment as it was originally entered; or (3) extend the probationary period by up to two years. See State v. Hunter, 1 S.W.3d 643, 644 (Tenn. 1999); see also Tenn. Code Ann. §§ 40-35-310, -311(e), -308(c) (2014). "[A]n accused, already on probation, is not entitled to a second grant of probation or another form of alternative sentencing." State v. Jeffrey A. Warfield, No. 01C01-9711-CC-00504, 1999 WL 61065, at *2 (Tenn. Crim. App. Feb. 10, 1999), perm. app. denied (Tenn. June 28, 1999); see also State v. Markquitton Sanders, No. M2010-02212-CCA-R3-CD, 2011 WL 4529655, at *2 (Tenn. Crim. App. Sept. 29, 2011), perm. app. denied (Tenn. Nov. 17, 2011).

The Defendant was sentenced to ten years, with one year to serve in confinement and the balance on community corrections. The Defendant violated the terms of his community corrections sentence, and it was revoked in March 2016. However, he was then granted probation with the condition that he successfully complete the rehabilitation program at Hope Center Ministries. Testimony at the probation violation hearing showed that the Defendant repeatedly violated the Center's policies and rules even after being allowed to restart the program, which ultimately resulted in his termination from the program in June 2016. As noted by the trial court, the Defendant has been provided numerous opportunities for rehabilitation, but he has failed to succeed. Thus, we conclude that the trial court did not abuse its discretion in revoking the Defendant's probation and ordering that he serve his sentence in confinement.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the sentencing decision of the trial court.

_____
ALAN E. GLENN, JUDGE